UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**ATTENTIVE, LLC,**
    Plaintiff,

v.                                                             **Case No. 4:24-cv-323-CLM**

**LINKED.EXCHANGE, LLC,**
    Defendant.

## MEMORANDUM OPINION

Defendant Linked.Exchange, LLC ("Linked.Exchange") has moved to stay proceedings and compel arbitration against Plaintiff Attentive, LLC ("Attentive"). The court **GRANTS IN PART AND DENIES IN PART** Linked.Exchange's motion to stay and compel arbitration.

## BACKGROUND

Attentive provides group wellness programs to customers through employer-sponsored medical plans. Linked.Exchange markets and provides technology support for businesses like Attentive.

In 2019, the companies formed a business relationship in which Linked.Exchange would market Attentive's services, manage Attentive's website, and develop software to automate Attentive's services. Over the next year, the companies entered into four agreements. The first two related to Linked.Exchange marketing Attentive's services: the "Non-Competition Agreement" (doc. 12-1) and the "Referral Agreement" (doc. 12-2). The third, "the Licensing Agreement" (doc. 12-3), related to Linked.Exchange automating and licensing Attentive's Proposal Calculation Tool. As its name suggests, the final agreement, "the Website Agreement," related to Linked.Exchange's development and management of Attentive's website.

The parties' relationship went south in 2024 when, Attentive claims, Linked.Exchange took down Attentive's website and took Attentive's customers and brokers. So Attentive sued Linked.Exchange in state court, alleging six counts: breach of all four contracts, tortious interference with business relations, misappropriation of trade secrets, conversion, money paid by mistake, and unjust enrichment.

Linked.Exchange removed the case to this court under diversity jurisdiction (doc. 1) and now asks the court to order the parties to arbitrate all claims and stay this case in the meantime. (Doc. 4).

## STANDARD OF REVIEW

The court should treat motions to compel arbitration like motions for summary judgment. *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014). Summary judgment is appropriate only when the moving party shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it is one that might affect the outcome of the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). And all evidence must be viewed and inferences drawn in the light most favorable to the nonmovant. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

## DISCUSSION

The Federal Arbitration Act ("FAA") provides that any arbitration provision in a written "contract evidencing a transaction involving commerce…shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. This provision "reflect[s] both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011). Following these policies, "courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *Id*.

When determining whether to grant a motion to compel arbitration, this court must "consider: (1) whether there is a valid agreement to

arbitrate; and (2) whether the dispute in question falls within the scope of that agreement." *Carusone v. Nintendo of Am., Inc.*, No. 5:19-CV-01183-LCB, 2020 WL 3545468, at *3 (N.D. Ala. June 30, 2020) (quoting *Scurtu v. Int'l Student Exch.*, 523 F. Supp. 2d 1313, 1318 (S.D. Ala. 2007)). "To resolve these questions, courts apply state-law principles relating to ordinary contract formation and interpretation, construed through the lens of the federal policy favoring arbitration." *Scurtu*, 523 F. Supp. 2d at 1318' *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[When] determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state where the dispute occurred.").

Under the FAA, "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "[T]he party resisting bears the burden of proving that the claims at issues are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). "[A]n order to arbitrate [a] particular grievance should not be denied" if the party resisting arbitration cannot show "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

### A. The License Agreement compels arbitration for part of Count 1 and all of Count 5.

The parties focus heavily on the Licensing Agreement because it is the only agreement that contains an arbitration provision:

> **12. ARBITRATION.** The parties agree to submit any dispute <mark>under this Agreement</mark> to binding arbitration under the Revised Uniform Arbitration Act as adopted in North Carolina (GS1-569) in the following location: Mecklenburg County, North Carolina. Judgement upon the award rendered by the arbitrator may be entered in any court with jurisdiction to do so. Licensor and

> Licensee agree to use the American Arbitration Association only if arbitration is triggered per the terms of this Agreement.

(Doc. 4-2, p. 15) (highlight added). As the highlighted language shows, the parties agreed to undergo arbitration for any dispute stemming from the Licensing Agreement. The parties agree that two claims fit this bill: breach of the Licensing Agreement (Count 1) and money paid by mistake (Count 5). And Attentive has not provided an argument for why these two claims should not go to arbitration. So the court grants Linked.Exchange's motion to compel arbitration as to these two claims.

### B. Attentive's remaining claims are not within the scope of the Licensing Agreement.

That leaves us with seven claims that span five counts: breach of contract as to the Non-Competition Agreement (Count 1); breach of contract as to the Referral Agreement (Count 1); breach of contract as to the Website Agreement (Count 1); tortious interference with business or contractual relations (Count 2), misappropriation of trade secrets (Count 3), conversion (Count 4), and unjust enrichment (Count 6).

The court must now determine (a) whether these claims are also subject to arbitration, and if they are not, (b) whether the court should stay this case while some claims are arbitrated.

Whether these claims are subject to arbitration boils down to whether these claims also stem from the Licensing Agreement, which contains the already-mentioned arbitration clause, or from the earlier non-competition and referral agreements, which do not.

1. *Licensing Agreement*: The court agrees with Attentive that its remaining claims do not stem from alleged violations of the Licensing Agreement, which again is the limited reach of the arbitration provision:

> **12. ARBITRATION.** The parties agree to submit any dispute under this Agreement to binding arbitration under the Revised

> Uniform Arbitration Act as adopted in North Carolina (GS1-569) in following location: Mecklenburg County, North Carolina.

(Doc. 4-2, p. 15) (highlight added). While "the phrase 'any controversy or claim arising out of or relating to'…covers a broad range of disputes," *Harris v. Palm Harbor Homes, Inc.*, 198 F. Supp. 2d1303, 1306 (M.D. Ala. 2002) (quoting *Ex parte Crisona*, 743 So.2d 452, 456 (Ala. 1999)), "having [a] contract which contains a broad arbitration agreement does not necessarily mean that arbitration can be compelled when the subject of the dispute arises from a separate contract which does not have an arbitration clause." *Klay v. All Defendants,* 389 F.3d 1191, 1201 (11th Cir. 2004).

The phrase "any dispute under this Agreement" is not so broad that it reaches disputes stemming from other agreements. To the contrary, by its plain language, it narrows the scope of arbitrable claims to only those stemming from the Licensing Agreement.

So the court must look to the agreements that Attentive claims Linked.Exchange violated in the remaining claims. The non-competition agreement contains these two provisions regarding legal disputes:

> This agreement shall be governed by and construed under the State of Alabama.
>
> …
>
> The parties agree that any claim of any type brought by one against the other must be maintained only in a court sitting in Marshall County, Alabama, or if a federal court, the Northen District of Alabama.

(Doc. 12-1, p. 6). The Referral Agreement (doc. 12-2) contains the following provision regarding legal disputes:

> This agreement shall be governed by, interpreted and construed in accordance with the laws of the State of Alabama…

5

(Doc. 12-2, p. 5). And the parties did not submit the Website Agreement, so there is no evidence that it contains an arbitration clause either.

Because none of Attentive's remaining claims are disputes that rise under the Licensing Agreement, none of them must be sent to arbitration. In fact, the non-competition agreement *required* Attentive to file claims stemming from its violation in state court (as Attentive did). So the court denies Linked.Exchange's request to force these claims to arbitration: breach of contract as to the Non-Competition Agreement (Count 1); breach of contract as to the Referral Agreement (Count 1); breach of contract as to the Website Agreement (Count 1); tortious interference with business or contractual relations (Count 2), misappropriation of trade secrets (Count 3), conversion (Count 4), and unjust enrichment (Count 6).

### C. The court will not stay this case pending arbitration.

Linked.Exchange asks the court to stay all claims upon granting its motion to compel arbitration. "[A] district court shall stay a pending suit 'upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration' under a valid arbitration agreement." *Klay*, 389 F.3d at 1203-04. But "[w]hen confronted with litigants advancing both arbitrable and nonarbitrable claims…courts have discretion to stay nonarbitrable claims." *Id.* at 1204. "[C]ourts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed to with the litigation." *Id.*

Linked.Exchange has not responded to Attentive's argument against staying these claims, nor has it shown that the arbitrable claims predominate. To the contrary, Attentive's non-arbitrable claims far outnumber the claims being submitted to arbitration. And the court sees no reason to make Attentive wait to litigate those claims. So the court denies Linked.Exchange's motion to stay.

## CONCLUSION

For the reasons discussed above, the court **GRANTS IN PART** and **DENIES IN PART** Linked.Exchange's Motion to Compel Arbitration. The court **GRANTS** Linked.Exchange's motion to compel arbitration as to Count 1 (breach of contract, licensing agreement) and Count 5 (money paid by mistake). The court **DENIES** Linked.Exchange's motion to stay litigation and compel arbitration for Attentive's remaining claims.

The court **ORDERS** the Linked.Exchange to submit a responsive pleading to Attentive's Complaint. Following Linked.Exchange's response, the parties shall submit a joint Rule 26(f) Report, under the court's Initial Order.

**DONE** and **ORDERED** on January 9, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE